```
                  UNITED STATES DISTRICT COURT
                     DISTRICT OF NEW JERSEY


JOSEPH FERRIOLA JR. and        :
KELLY FERRIOLA,                :  HONORABLE JOSEPH E. IRENAS
         Plaintiffs,           :
                               :  CIVIL NO. 04-cv-4043(JEI)
     v.                        :
                               :
STANLEY FASTENING SYSTEMS,     :
L.P., and LOWE'S COMPANIES,    :        OPINION
INC.,                          :
                               :
         Defendants / Third    :
         Party Plaintiffs,     :
                               :
     v.                        :
                               :
THOMAS PARKS,                  :
         Third Party           :
         Defendant.            :
```

**APPEARANCES:**

STARK & STARK, PC
BY: Eric Joseph Ludwig, Esq.
    Scott I. Unger, Esq.
PO Box 5315
Princeton, NJ 08543-5315
    Counsel for Joseph Ferriola

DAY PITNEY, LLP
BY: Thomas C. Regan, Esq.
    John David Coyle, Esq.
PO Box 1945
Morristown, NJ 07962-1945
    Counsel for Stanley Fastening Systems, L.P.
    and Lowe's Home Centers, Inc.

ALFRED J. QUASTI, JR.
BY: Alfred Quasti, Jr.
52 Newton Avenue
Woodbury, NJ 08096
    Counsel for Thomas Parks

1

**IRENAS,** Senior District Judge:

Plaintiff Joseph Ferriola ("Ferriola") brings this product liability suit against Defendants/Third Party Plaintiffs Stanley Fastening Systems, L.P. ("Stanley") and Lowe's Home Centers, Inc. ("Lowe's") for negligence, strict liability, and breach of implied and express warranties after he suffered injuries from the alleged misfiring of a pneumatic nailer manufactured by Stanley.  Stanley and Lowe's filed a Third Party Complaint against Third Party Defendant Thomas Parks ("Parks") seeking indemnification and contribution.  Parks presently moves for summary judgment on all claims against him.  For the reasons stated below, summary judgment will be granted.

I.

On December 4, 2006, Parks purchased a Bostitch Stanley SB80 pneumatic nailer "as is" from Lowe's Home Improvement Center in Maple Shade, New Jersey.[1] (Def's Ex. B, Dep. of Parks at 17-18.) Parks had used the nailer on many occasions since the date of purchase.  (Id. At 20: 21-25.)  The nailer came equipped with a contact trip mechanism, and included in the box were an

---

[1] Parks's nailer was labeled "as is" when it was purchased because the box containing the nailer had been opened.  (Def's Ex. B, Dep. of Parks at 19: 8-10.)  The nailer itself was not tampered with, and the box contained all information, product manuals, and parts as packaged by the manufacturer. (Id. at 19-20.

2

instruction manual and a sequential trip mechanism that a purchaser can install on his own.[2] (Id. at 19-20.)  It is undisputed that Parks did not install the sequential trip mechanism or in any way modify the nailer after the date of purchase.

Ferriola, an experienced carpenter who has owned and used pneumatic nailers with contact trip mechanisms, borrowed Parks' nailer because he had recently returned two of his own since they double fired and his third one was broken.  (Def's Ex. D, Dep. of Ferriola at 25-26, 145:13-18.)  Parks, Ferriola's longtime friend and neighbor, did not provide the manual and sequential trip mechanism to Ferriola when he lent him the nailer, and Ferriola did not request them.  (Id. at 146:21-147:1.)  Parks claims that he did not do so because he believed that Ferriola was experienced in the operation of the nailer. (Def's Ex. B, Dep. of Parks at 36:1-7.)

While using the nailer on March 3, 2004, Ferriola was injured when it double fired.[3]  Ferriola brought suit against

---

[2] The contact trip mechanism that comes installed on the nailer allows the it to fire out nails in rapid sequence. (Pl's Ex. E, Expert Rep. of Olmstead at 2-3.)  Alternatively, the sequential trip mechanism only allows one nail to shoot out at a time.  *Id.*  A user must uninstall the contact trip and then attach the sequential trip on his own in order to make use of this feature.  *Id.*  Stanley maintains that both mechanisms serve different purposes and are safe when used as intended.  *Id.*

[3] While using the nailer to attach a rail to a post, it shot out a second nail that penetrated Ferriola's right leg and

Stanley and Lowe's on April 28, 2004, in the Superior Court of New Jersey, Law Division, Camden County, for negligence, strict liability, and breach of implied and express warranties.[4]  On August 18, 2004, Stanley removed the case to this Court.[5]

In June, 2005, Stanley and Lowe's both brought identical third-party complaints against Parks seeking contribution and indemnification.  Stanley and Lowe's claim that while they have a continued duty to provide safe products and warn the user of any hazards, Parks, as the party controlling the nailer, also had an independent duty to deliver all warnings and safety equipment to Ferriola.  Since Parks failed to do so, they reason, he is contributorily negligent.  Parks moves for summary judgment asserting that he owed no duty to Ferriola.  For the reasons set forth below, summary judgment will be granted.

---

fractured his femur.  (Def. Ex. A, Expert Rep. of Holt at 2.)

[4] Ferriola claims that Stanley, the manufacturer, and Lowe's, the distributer, are liable based on various theories of negligence and strict liability because a nailer that comes equipped with a contact trip mechanism is unreasonably dangerous and is therefore defectively designed.  Furthermore, Ferriola claims that Stanley and Lowe's knew that nailers were prone to double firing and failed to provide adequate warnings and safety devices to mitigate the potential danger.

[5] This Court has subject matter jurisdiction pursuant to 28 U.S. C. 1332(a) and 28 U.S.C. 1441(a).  Ferriola is a citizen of New Jersey, Stanley is a citizen of Delaware with its principal place of business in Rhode Island, and the amount in controversy exceeds $75,000. Lowe's also consented to the removal.

II.

"[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56c). In deciding a motion for summary judgment, the Court must construe the facts and inferences in a light most favorable to the non-moving party. *Pollock v. Am. Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986). The role of the Court is not "to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

"'With respect to an issue on which the non-moving party bears the burden of proof, the burden on the moving party may be discharged by 'showing'– that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case.'" *Conoshenti v. Public Serv. Elec. & Gas*, 364 F.3d 135, 145-46 (3d Cir. 2004) (quoting *Celotex*). "The plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden

of proof at trial.  In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  *Celotex*, 477 U.S. at 322; Fed. R. Civ. P. 56(e) (A party opposing summary judgment cannot rest upon the "mere allegations or denials of the adverse party's pleading" but must respond with affidavits or depositions setting forth "specific facts showing that there is a genuine issue for trial.").

### III.

#### A.

Under New Jersey law, indemnification is only available when a party without fault is liable for the torts of another party as a result of constructive, secondary, or vicarious liability.  *See Allied Corp. v. Frola*, 730 F.Supp. 626, 639 (D.N.J. 1990).[6]  Two different situations can give rise to indemnification: either when a contract expressly provides for it, or when a special legal relationship creates an implied right of indemnity.  *See Id.  See also Nivens v. Seivers Hauling Corp.*, 424 F.Supp. 82, 87-88 (D.N.J. 1976).

If the latter, "it is the existence of a special legal

---

[6] *Abrogated on other grounds by Apgar v. Lederle Laboratories*, 123 N.J. 450 (1991); *Amland Properties Corp. v. Aluminum Co. of Am.*, 808 F.Supp. 1187 (D.N.J. 1992).

relationship sufficient to impose certain duties and a subsequent breach of those duties that permits an implied indemnification." *Ruvolo v. United States Steel Corp.*, 133 N.J. Super. 362, 367 (1975). Examples of special legal relationships that can give rise to liability include lessor-lessee, principal-agent, and bailor-bailee. *See Ramos v. Browning Ferris Indus. of S. Jersey*, 103 N.J. 177, 189 (1986) (citing cases that specifically address various special legal relationships); *see also Allied*, 730 F.Supp. at 639 n.7 (discussing special legal relationships such as lessor-lessee, union-member, and employer-employee).

Stanley and Lowe's cannot claim indemnification from Parks as a matter of law. No contract exists between either Parks and Stanley or Parks and Lowe's. Likewise, no special legal relationship exists between Parks and either Stanley or Lowe's. The undisputed evidence merely demonstrates that Parks had an attenuated relationship with both Defendants. He was only a purchaser of a product manufactured by Stanley and sold by Lowe's. Accordingly, Stanley and Lowe's indemnification claims fail, and this Court will grant summary judgment in favor of Parks.

B.

In addition to the indemnification claim against Parks, Stanley and Lowe's also assert claims for contribution under the New Jersey Joint Tortfeasors Contribution Act, N.J. Stat. Ann.

§2A:53A-1 *et seq.*, and the New Jersey Comparative Negligence Act, N.J. Stat. Ann. §2A:15-5.1 *et seq*.

Under New Jersey's Joint Tortfeasors Contribution Act, one tortfeasor "shall be entitled to recover contribution from the other joint tortfeasor or joint tortfeasors for the excess so paid over his pro rata share." N.J. Stat. Ann. 2A:53A-3 (2000).[7] The Act defines "joint tortfeasors" as "two or more persons jointly or severally liable in tort for the same injury to person or property." N.J. Stat. Ann. 2A: 53A-1 (2000). Stanley and Lowe's claim that they are entitled to contribution because Parks, the end purchaser, failed to give Ferriola the sequential trip mechanism and product manual and is thus contributorily negligent.

Analogizing this case to employment situations, Stanley and Lowe's argue that while they may be liable for Ferriola's injuries since they have a nondelegable duty to provide warnings and safety equipment, Parks is also partially liable because he received and was in control of the safety equipment and warnings. Since Parks was the party controlling the safety devices and warnings, Stanley and Lowe's claim that he had a duty to pass

---

[7] The New Jersey Comparative Negligence Act modifies the New Jersey Joint Tortfeasors Contribution Act. *See Brodsky v. Grinnel Haulers, Inc.*, 181 N.J. 102, 116 (2004). It allows a plaintiff to recover damages according to the defendant's percentage of fault, as determined by the trier of fact. N.J. Stat. Ann. 2A: 15-5.3 (2000).

them along to the ultimate user, Ferriola. In failing to do so Parks breached his duty, they assert, and is therefore liable for contributory negligence.

In a products liability case, the manufacturer has a nondelegable duty to provide adequate warnings and safety devices to the ultimate user. *See Lally v. Printing Mach. Sales and Serv. Co.*, 340 N.J. Super. 181, 184 (1990); *see also Butler v. PPG Indus., Inc.*, 201 N.J. Super. 558, 563-4 (1985) (holding that a manufacturer still remains liable even when the defective product is not the sole cause of the injury). On the other hand, New Jersey courts have generally declined to impose a duty to provide safety devices or warnings on end purchasers. See *Lally*, 340 N.J. Super. at 186. As one court has said, manufacturers cannot escape liability by relying on the "haphazard conduct of the ultimate purchaser." *Bexia v. Havir Mfg. Corp.*, 60 N.J. 402, 410 (1972).[8]

The issue is what duty Parks owed to Ferriola. Because Parks merely lent Ferriola the nailer, a bailor-bailee

---

[8] The employment context provides one exception to this general rule, and courts have imposed a duty on employers to provide appropriate safety equipment and warnings to their employees. *See Laidlow v. Hariton Mach. Co, Inc.*, 170 N.J. 602 (2002) (holding that an employer could be partially liable for an employee's injury if it acted with knowledge that it was likely to be injured and failed to provide a safe workplace). This duty, however, does not absolve the manufacturer of its own independent duty to inform employees of hazards. *See Id.*

relationship was created between them.  According to New Jersey law, a gratuitous bailment exists when one party entrusts personal property to the care of another but receives no consideration for it.  *See Banks v. Korman Assoc.*, 218 N.J. Super. 370, 372-3 (1987) (defining a gratuitous bailment for the purpose of assessing liability of a landlord who evicted a tenant but agreed to temporarily allow her to leave her furniture in the apartment, which was later damaged).

If parties create a bailment for the sole benefit of the bailee, the bailor's only duty is to disclose defects of which he knows or should know.  See *Nelson v. Fruehauf Trailer Co.*, 20 N.J. Super. 198, 202 (1952), *aff'd*, 11 N.J. 413 (1953); *see also Rigby*, 548 F.Supp. at 204. The Restatement (Second) of Torts states:

> One who supplies directly or through a third person chattel for another to use is subject to liability . . . if the supplier knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied . . . and fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous. Restatement (Second) of Torts § 388 (1965).[9]

Therefore, if bailor Parks failed to inform bailee Ferriola of a dangerous condition or defect of which he knew or should have

---

[9] The Restatement's definition of "supplier" includes a gratuitous bailor for the purposes of this section.  Restatement (Second) of Torts § 388 cmt. c (1965).

known, he could be liable for Ferriola's injuries.  *Id; See Nelson*, 20 N.J. Super. at 202.

However, if the bailee has affirmative knowledge of the product and its dangerous condition, the bailor can be absolved of liability. *See* Restatement (Second) of Torts § 388.  The bailor is only required to disclose product defects when he "has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition." *Id.*  Therefore, a bailor has no duty to disclose a defect if he reasonably believes that the bailee has knowledge of the dangerousness of the bailed item, or if the nature of the danger is open and obvious such that it is reasonable for the bailor to believe that the bailee will understand the danger. *Id.*  In such situations, the bailor is not liable for any injury to the bailee as a result of the bailed item.

Thus, the question presented is whether or not Parks knew or should have known of the nailer's tendency to misfire.  However, Stanley and Lowe's focused on whether or not Parks had a duty to pass along safety devices and product manuals.  In short, because the parties misapprehended the nature of Parks' duty to Ferriola, their focus on his failure to provide safety devices and the product manual (i.e. the alleged breach) is misplaced.  Moreover, while Parks stated that he often used the nailer himself, Stanley and Lowe's provide no evidence that Parks, based on his own

11

knowledge and experience, knew of the alleged defect.  The record is silent as to Parks' knowledge of any product defect or whether or not he should have known about it.[10]

Furthermore, Stanley and Lowe's, the non-moving parties who bear the burden of proof at trial, have not submitted any affidavits, depositions, interrogatories, or other evidence to set forth "specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Instead, they rely solely on their opposition brief, which, besides misapprehending the nature of Parks' duty, fails to put forth any evidence that Parks knew of the nailer's alleged tendency to double fire or otherwise malfunction.  As a result, Stanley and Lowe's have failed to prove that Parks breached the duty he owed to Ferriola and cannot establish a claim of contribution.  Because of this fatal lack of evidence, the Court will grant summary judgment in favor of Parks on the contribution claim as well.

---

[10]  There is some evidence in the record that <u>Ferriola</u> possessed knowledge of a nailer's ability to double shoot since he has owned and operated similar nailers, had read the product manuals for the nailers, and had recently returned two of them because of their tendency to double fire.

IV.

Based on the foregoing, Parks' Motion for Summary Judgment will be granted. This Court will issue an appropriate order.

Date: August 1, 2007.

                                                      s/ Joseph E. Irenas
                                                     JOSEPH E. IRENAS, S.U.S.D.J