```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF NEW JERSEY


JOSEPH FERRIOLA JR. and         :
KELLY FERRIOLA,                 :  HONORABLE JOSEPH E. IRENAS
          Plaintiffs,           :
                                :  CIVIL NO. 04-cv-4043(JEI)
     v.                         :
                                :
STANLEY FASTENING SYSTEMS,      :
L.P., and LOWE'S COMPANIES,     :       OPINION
INC.,                           :
                                :
          Defendants.           :
```

**APPEARANCES:**

STARK & STARK, PC
BY: Eric Joseph Ludwig, Esq.
    Scott I. Unger, Esq.
PO Box 5315
Princeton, NJ 08543-5315
    Counsel for Plaintiffs

DAY PITNEY, LLP
BY: Thomas C. Regan, Esq.
    John David Coyle, Esq.
PO Box 1945
Morristown, NJ 07962-1945
    Counsel for Defendants

**IRENAS**, Senior District Judge:

Defendants, Lowe's Companies, Inc. ("Lowe's") and Stanley Fastening Systems, L.P., ("Stanley") (collectively "Defendants"), bring this motion to bar the expert testimony of Plaintiffs' expert witness, Darry R. Holt, P.E. ("Holt"), and for summary judgment. For the reasons stated below, Defendants' motions will be denied.

I.

The underlying facts to this dispute are set forth in detail in this Court's Opinion dated August 1, 2007 (Docket No. 49). The basic facts are that former Third-Party Defendant Thomas Parks ("Parks") purchased a pneumatic nailer from Lowe's Home Improvement Center on December 4, 2006, which came equipped with a contact trip mechanism and included a sequential trip mechanism with installation instructions.  Plaintiff Joseph Ferriola ("Ferriola") borrowed the nailer with the contact trip mechanism from Parks.  Ferriola was injured when, while using the nailer, it double-fired and injured his right leg and femur.

Ferriola brought suit against Stanley and Lowe's for negligence, strict liability, and breach of implied and express warranties, who in turn brought identical, third-party complaints against Parks seeking contribution and indemnification.  Parks filed a motion for summary judgment on the theory that he had no duty to Ferriola, which this Court granted.  (Docket Nos. 49, 50).

Defendants now move for summary judgment, asserting that Plaintiffs' theory of liability is based on Holt's testimony that the design of the nailer was defective and the warnings inadequate.  Defendants argue that Holt's testimony is inadmissible, and without it, Plaintiffs cannot maintain an

action.[1]  Plaintiffs contend that Holt's testimony is admissible and that even if the Court bars his testimony, summary judgment is still not warranted.

## II.

Federal judges are charged with the task of being "gatekeepers" to ensure that expert testimony is both relevant and reliable.  See *Kannankeril v. Terminix Int'l, Inc.*, 128 F.3d 802, 806 (3d Cir. 1997) (citing *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 589 (1993).  Fed. R. Evid. 702 ("Rule 702") governs the admissibility of expert witnesses.[2]  Under Rule 702, the Court must make three primary determinations: "(1) that the proffered witness be an expert; (2) that the expert testify about matters requiring scientific, technical, or specialized knowledge; and (3) that the expert's testimony assist the trier

---

[1] They also include a cursory argument that the strict liability claims against Lowe's should be dismissed because Lowe's is a "product seller" under New Jersey law.

[2] Rule 702 provides,
   If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.
Fed. R. Evid. 702.

of fact." *Ebenhoech v. Koppers Indus.*, 239 F. Supp. 2d 455, 465 (D.N.J. 2002). Here, Defendants challenge Holt's qualifications and the reliability of his expert report.

Defendants contend that Holt is not a qualified expert because, although Holt is an engineer, he: (1) has no education, training, or experience in the design, manufacture, or testing of pneumatic nailers; (2) has no experience working with such nailers, or supervising others who work with them; (3) has never worked on the manufacture or design of pneumatic nailers; (4) has only testified about nailers in one of the 38 cases in which he testified in the past four years;[3] (4) has not authored any publication on the subject; and (5) made no attempt to contact any governing body or manufacturer concerning his opinions about the nailer.

Rule 702, however, espouses a liberal policy of admissibility that extends to the substantive as well as the formal qualification of experts. *See In re Paoli R.R. Yard Pcb Litig.*, 35 F.3d 717, 741 (3d Cir. 1994)(citing *Hammond v. Int'l Harvester Co.*, 691 F.2d 646, 652-53 (3d Cir. 1982)(permitting an engineer to testify about tractors in a products liability action even though his "only qualifications were sales experience in the field of automotive and agricultural equipment and teaching high

---

[3] At his deposition, however, Holt testified that he was currently involved in about six other cases involving nail guns. (Coyle Aff. Ex. B, 44:21-45:4).

4

school automobile repair") and *Knight v. Otis Elevator Co.*, 596 F.2d 84, 87-88 (3d Cir. 1979)(permitting an expert to testify about the design defect of elevator buttons despite the expert's "lack of specific background in [the] design and manufacture of elevators").

Holt is a registered professional mechanical engineer who worked in industry for approximately 10 years,[4] and then as a consultant for 29 years. (Charnas Aff. Ex. 3, ¶¶ 6-7). During Holt's career as an engineering consultant, in which he investigates accidents, identifies hazards, and evaluates the safety design and condition of machines, he has evaluated approximately 24 nail guns dating back to 1975. (*Id.* ¶ 11). He has also "observed the common mechanical projectile hazard on hundreds of different kinds of machines including machine tools, crushing and sizing equipment, and continuous rolling lines in industries such as construction, textile, metal processing, paper, plastic, film, and printing." (*Id.*). Accordingly, this Court holds that Holt's experience as an engineer for 39 years

---

[4] Holt worked for U.S. Steel and W.R. Grace & Co. He was responsible for maintaining and safeguarding equipment, including power tools, and supervising maintenance and operating personnel. (*Id.* ¶ 9). Additionally, he "had many engineering projects in which it was necessary to design processes, select component parts for same, and design interface safety features including guards and controls." (*Id.* ¶ 10).

who has knowledge of engineering practices and standards[5] makes him qualified as an expert in this case.

The Court must next determine whether the process or technique Holt used in formulating his opinion was relevant and reliable.  *See In re Paoli*, 35 F.3d at 741; *Daubert,* 509 U.S. at 589.  In a products liability action, when determining whether an expert's report is reliable under Rule 702, courts in the Third Circuit generally look to "whether the expert considered (1) federal design and performance standards, (2) standards established by independent standards organizations, (3) relevant literature, (4) evidence of industry practice, (5) product design and accident history, (6) illustrative charts and diagrams, (7) data from scientific testing, (8) the feasibility of any suggested modification, and (9) the risk-utility of any suggested modification."  *Ebenhoech v. Koppers Indus.*, 239 F. Supp. 2d 455, 467 (D.N.J. 2002)(citing *Milanowicz v. The Raymond Corp.*, 148 F. Supp. 2d 525, 536 (D.N.J. 2001)(hereinafter the "*Milanowicz* factors").

In his expert report, Holt opined that the pneumatic nailer was defectively designed and is unreasonably dangerous due to the "lack of adequate engineering controls to eliminate the hazard of an unintended nail firing."  (Coyle Aff. Ex. A, 7).  He suggested

---

[5] These include "standards of good engineering practice," "safety design hierarchy," and "equipment safety standards." (*Id.* ¶¶ 15, 17, 18).

that effective and inexpensive engineering controls, namely a sequential trip mechanism or an anti-double fire mechanism, existed and should have been used. (*Id.*). Indeed, he admits that a sequential trip mechanism was provided along with the nailer equipped with a contact trip mechanism, but asserts that the contact trip mechanism's danger outweighs its utility and thus should not have been included.[6] Lastly, he concludes that the warnings and instructions provided with the nailer were "inadequate to inform a potential user of the hazard and potential for injury and what steps the user can take to eliminate same, i.e., by installing a sequential trip mechanism. The information in the manual does not state that a nailer equipped with a contact trip mechanism is hazardous or unsafe." (*Id.*).

Holt based his testimony on: (1) his physical inspection of the nailer; (2) field testing of the nailer; (3) review of the nailer's user manual and safety warnings; (4) familiarity with the contact trip and sequential trip mechanisms based upon his

---

[6] He relies on a statement of Brian Creitz, a carpenter with experience using both types of trip mechanisms, and a report in Tool Trade Magazine that the sequential trip does not result in a noteworthy decrease in productivity as compared to the contact trip mechanism. (Holt Report, p.6). Furthermore, he notes that "it has been well known in the nail gun industry [since at least 1972] that there is a risk of serious injury due to inadvertent activation of dual activation pneumatic nailer equipped with contact trip," of which the manufacturer of the subject nailer was aware. (Holt Report, p.p. 5-6)(citing the Stanley Bostich, Inc. manual and patent).

previous experiences as a consulting engineer; (5) familiarity with the safety design hierarchy; and (6) relevant industry literature and standards.[7]

Defendants argue that Holt's opinion is unreliable because he merely lists standards of independent organizations without discussing them, and his opinions conflict with these standards. Although Holt only cites one of the three independent standards that he lists in his appendix,[8] he does so to demonstrate that this standard, promulgated subsequent to the standard applicable to the subject nailer, encourages the use of sequential trip mechanisms. Thus, he opines, this standard supports his contention that the nailer should have come equipped with a sequential trip mechanism. In addition to this standard, Holt cites the majority of the listed

---

[7] Holt provides a list of the engineering handbooks, standards, treatises, reports, and magazines he consulted in preparation for the report in an appendix to the report, (Coyle Aff. Ex. A, App. 2), and cites to approximately half of them in the report's text. The cited sources include: (1) Tool Trade Magazine, Winter, 1995; (2) Design of Warning Labels and Instruction, Joseph P. Ryan, 1991; (3) Standard Handbook of Machine Design, Shigley 1986; (4) Safety Hierarchy with Bibliography, Barnett & Brickman, June 1985; (5) Product Safety Engineering for Managers, Seiden, 1984; (6) Human Factors Design Handbook, Woodson 1981; and (7) Human Engineering Guide to Equipment Design, American Institutes for Research, 1972. He also relied upon the deposition testimony of five individuals, discovery documents in this case, the Bostich Operation and Maintenance Manual, Cooper University Medical Center Emergency Room Records, and a relevant patent. (Coyle Aff. Ex. A, App. 1).

[8] The three listed standards were promulgated by the American National Standards Institute ("ANSI") and the International Staple, Nail, and Tool Association ("ISANTA"). Holt cites ANSI SNT-101-2002 ("ANSI 2002") in the body of his report. It is undisputed, however, that ANSI 1993 applies to the subject nailer. *See* Pl. Br. P.13.

sources in the body of his report.

Lastly, Defendants contend that Holt's report is unreliable because he has not published any articles on this topic. Publication, however, is only one factor courts use to determine whether an expert's opinion is reliable. *See Daubert*,, 509 U.S. at 594 ("Publication . . . is not a sine qua non of admissibility"). Indeed, publication is not even a *Milanowicz* factor.

Although the Court notes that Holt's report does not satisfy every *Milanowicz* factor, strict adherence to these factors is not mandated, particularly when, as here, the facts differ from *Milanowicz* in important ways. In *Milanowicz,* the court barred the testimony of an expert whose report concluded that a fork mounting and adjustment mechanism on a lift truck was defective because use of the mechanism was inherently dangerous procedure. *See Milanowicz,* 148 F. Supp. 2d at 526. The expert could not identify any model or manufacturer of his proposed alternative design, nor did he discuss how the technology worked or how it would be integrated with the lift truck. *Id.* at 540.

Here, the suggested modification, the use of a sequential trip mechanism, is both feasible and was included with the subject nailer. The basis of the testimony here is that the proposed alternative exists and should have been used because it is safer and not significantly slower than the mechanism used.

9

In *Milanowicz,* however, "the central contention of [the expert's] report, and thus of Plaitniff's case, [was] that, because powered fork positioners were available and widely used," the manufacturer should have included that device into the lift truck.  *Id.* at 538.  The expert wholly failed to support that central contention with anything but his own assurances that the proposed alternative device was available and used.[9]  As stressed in *Kumho Tire,* "the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).

Here, Holt is qualified to testify as an expert, and his report is reliable, as it is based on his own opinion as well as various independent sources.  Defendants will have the opportunity to attempt to undermine his conclusions and testimony during cross-examination.  For the reasons set forth above, Lowe's motion to bar Holt's expert testimony will be denied.

Additionally, the Court will deny Defendants' motion for summary judgment.  The first basis of the motion is that Plaintiffs cannot support their claims without Holt's testimony.

---

[9]  *See also Ebenhoech,* 239 F. Supp. 2d 455, 467-69 (barring expert report because he (1) failed to link his conclusions or the facts of the case to any of the twenty-two sources he referenced at the outset of his report, and (2) did not "suggest modifications, alternative designs, or alternative warnings that would create a safer product").

10

Because the Court holds that Holt's testimony is admissible, this basis for summary judgment is now moot.

Defendants' second basis for summary judgment is that Lowe's is a "product seller," and not a "manufacturer," as defined by N.J.S.A. § 2A:58C-9,[10] and thus Lowe's should be relieved of all strict liability claims. Lowe's essentially argues that because it submitted an affidavit certifying that the manufacturer, Stanley, admits that it designed and manufactured the subject nailer, and because Stanley has been identified and is a co-defendant, dismissal is appropriate. It fails, however, to recognize that it can nevertheless be held liable as a product seller under subsection (d), which provides:

> A product seller shall be liable if:
> (1) The product seller has exercised some significant control over the design, manufacture, packaging or

---

[10] "'Product seller' means any person who, in the course of a business conducted for that purpose: sells; distributes; leases; installs; prepares or assembles a manufacturer's product according to the manufacturer's plan, intention, design, specifications or formulations; blends; packages; labels; markets; repairs; maintains or otherwise is involved in placing a product in the line of commerce." *Torres v. Lucca's Bakery*, 487 F. Supp. 2d 507, 515 n.14 (D.N.J. 2007)(quoting N.J.S.A. § 2A:58C-8). "'Manufacturer' means (1) any person who designs, formulates, produces, creates, makes, packages, labels or constructs any product or component of a product; (2) a product seller with respect to a given product to the extent the product seller designs, formulates, produces, creates, makes, packages, labels or constructs the product before its sale; (3) any product seller not described in paragraph (2) which holds itself out as a manufacturer to the user of the product; or (4) a United States domestic sales subsidiary of a foreign manufacturer if the foreign manufacturer has a controlling interest in the domestic sales subsidiary." *Id.*

>    labeling of the product relative to the alleged defect in
>    the product which caused the injury, death or damage; or
>    (2) The product seller knew or should have known of the
>    defect in the product which caused the injury, death or
>    damage or the plaintiff can affirmatively demonstrate that
>    the product seller was in possession of facts from which a
>    reasonable person would conclude that the product seller
>    had or should have had knowledge of the alleged defect in
>    the product which caused the injury, death or damage; or
>    (3) The product seller created the defect in the product
>    which caused the injury, death or damage.

N.J. Stat. § 2A:58C-9(d). Because neither Defendants nor Plaintiffs have provided any evidence in connection with this motion with respect to Lowe's control, knowledge, or creation of the defect, material issues of fact exist. Thus, Lowe's summary judgment motion will be denied.

### III.

For the reasons set forth above, Defendants' motions to bar the expert testimony of Plaintiffs' expert witness and for summary judgment will be denied. The Court will enter an appropriate Order.

Dated: December 14, 2007

s/ Joseph E. Irenas<br>
<b>JOSEPH E. IRENAS, S.U.S.D.J.</b>

12